UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FRANCISCO CARBALLO GUTIERREZ,

    Plaintiff,

v.                                                                                              CASE NO. 6:21-CV-0051-MAP

COMMISIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

    This is an appeal of the administrative denial of disability insurance benefits (DIB) and period of disability benefits.[1]  *See* 42 U.S.C. § 405(g).  Plaintiff argues the administrative law judge (ALJ) erred by relying on Plaintiff's non-compliance with prescribed continuous positive airway pressure (CPAP) therapy in finding him not disabled.  Relatedly, Plaintiff contends the ALJ should have included limitations associated with Plaintiff's obstructive sleep apnea in his residual functional capacity (RFC) formulation.  Plaintiff also alleges that the Appeals Council (AC) erred in its consideration of medical evidence Plaintiff submitted for the first time after his hearing.  After considering the parties' arguments (doc. 28) and the administrative record (docs. 21, 22), I find the Commissioner's decision is supported by substantial evidence.  I affirm.

    A.    *Background*

    Plaintiff Francisco Carballo Gutierrez, 61 years old at his June 11, 2018 administrative hearing, alleges a disability onset date of January 8, 2013, due to obstructive sleep apnea,

---

[1] The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

Crohn's disease, depression, hypertension, thrombosis, facial cellulitis, low back pain, and obesity. (R. 238)  After graduating high school, Plaintiff attended two years of college with a focus on computer science but did not earn a degree. (R. 23)  He worked as a copier service technician from 1999, until his alleged onset date in 2013. (R. 35)  Plaintiff is married with four adult children. (R. 25)  He lives with his wife, who works at a doctor's office, and his mother-in-law and two sisters-in-law, who moved in with him after their home in Puerto Rico was damaged in Hurricane Maria. (R. 25)  Plaintiff's date of last insured (DLI) is December 31, 2017; he must show he became disabled by this date to receive benefits.

Plaintiff testified that he stopped working in 2013, primarily because of Crohn's disease flare-ups.  He testified that every few months abdominal pain sends him to the hospital for treatment and that he recently lost over 25 pounds due to frequent bowel movements. (R. 28)  He also has sleep apnea but because he struggles to keep his CPAP mask on while sleeping, he gets tired often during the day. (R. 34-37)  His low back pain, osteoarthritis, and hypertension also limit his ability to function, according to Plaintiff. (R. 28-32)  He takes Tylenol and Advil to control his pain. (R. 30)  On an average day, he alternates between looking at his computer, smart phone, and TV and napping.  He said he drives about once a week. (R. 27) He attends church weekly.

After a hearing, the ALJ found Plaintiff suffers from the severe impairments of Crohn's disease and obstructive sleep apnea. (R. 1574)  Despite these impairments, the ALJ found Plaintiff maintained the residual functional capacity (RFC) for a full range of work at all exertional levels with the following non-exertional limitations:

> The claimant must avoid concentrated exposure to extreme heat and extreme cold.  He must avoid concentrated exposure to atmospheric conditions, such as fumes, odors, dust, and gases.

(R. 1576-77)  After consulting a vocational expert (VE), the ALJ found (in an August 2018 decision) that with this RFC, Plaintiff could return to his past relevant work as a copier service technician and, therefore, was not disabled. (R.1571-87)   Also testifying at the hearing were two medical experts, one regarding Plaintiff's mental impairments and one regarding his physical ones.

Plaintiff appealed the ALJ's decision to the Appeals Council (AC), which denied review in May 2019. (R. 11).  Plaintiff obtained a new attorney, who asked the agency for permission to submit a late filing (a sleep disorders medical source statement by a physician dated after the ALJ's decision) based on good cause. (R. 217)  The agency agreed, and the AC set aside its earlier decision in November 2020. (R. 1)  Then, the agency considered the additional evidence but again denied review. (R. 1-3)  Plaintiff, his administrative remedies exhausted, appealed to this Court.

  B.  *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations.  These regulations establish a "sequential evaluation process" to determine if a claimant is disabled.  *See* 20 C.F.R. § 404.1520.  If an individual is

found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    *Discussion*

        1.    *ALJ's consideration of Plaintiff's obstructive sleep apnea*

Citing Social Security Ruling (SSR) 82-59, Plaintiff argues the ALJ erred by relying on his non-compliance with prescribed CPAP therapy in finding Plaintiff not disabled. According to Plaintiff, that he did not use his CPAP mask for the recommended number of hours per night should not count against him, because he had the involuntary habit of pulling off his CPAP mask while sleeping. Plaintiff also contends – without developing the argument – that the ALJ's opinion is unsupported by substantial evidence because Plaintiff's RFC does not include limitations related to Plaintiff's obstructive sleep apnea. On this record, Plaintiff's reliance on SSR 82-59 is misplaced, and substantial evidence supports the ALJ's RFC formulation.

SSR 82-59 articulates the circumstances in which the Commissioner can deny benefits for a claimant's failure to follow prescribed treatment. SSR 82-59 at 1; *see also* C.F.R. 404.1530 (stating that a claimant who fails to follow prescribed treatment, absent a good reason, will not be found disabled and providing a list of acceptable reasons for noncompliance). The ruling provides:

> An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the [SSA] determines can be expected to restore the individual's ability to work, cannot by virtue of such "failure" be found to be under a disability.

SSR 82-59 at 2.[2] The procedures mandated in SSR 82-59 "only apply to claimants who would otherwise be disabled within the meaning of the Act." *Mack v. Comm'r of Soc. Sec.*, 420 F.

---

[2] SSR 82-59 was rescinded and replaced with SSR 18-3p, effective October 29, 2018. *See* SSR 18-3p, 2018 WL 4945641. As the ALJ's decision in this case was issued August 1, 2018, however, SSR 82-59 applies to Plaintiff's appeal. SSR 18-3p states: "Our adjudicators will apply this ruling when we make determinations and decisions on or after October 29, 2018.

App'x 881, 883 (11th Cir. 2011) (citing *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995) and *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001)). Consequently, courts in the Eleventh Circuit do not reach whether an ALJ followed the constricts of SSR 82-59 if the ALJ's determination that the claimant is not disabled is not significantly based on the claimant's noncompliance with prescribed treatment. *Id.*; *see also Crane v. Comm'r of Soc. Sec.*, No. 2:15-cv-678-FtM-CM, 2017 WL 541571, at * 13 (M.D. Fla. Feb. 10, 2017). For SSR 82-59 to apply, there must be a finding, based on substantial evidence, that the prescribed treatment would restore the claimant's ability to work. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (finding ALJ erred when he relied primarily, if not exclusively, on treatment records and testimony regarding the claimant's noncompliance with prescribed treatment in denying benefits).

Here, the ALJ did not significantly base her decision that Plaintiff is not disabled on Plaintiff's failure to use his CPAP mask; my review of the record convinces me that the ALJ marshaled other substantial evidentiary support for her conclusion. Consequently, SSR 82-59 does not apply. Specifically, in formulating Plaintiff's RFC, the ALJ relied on Plaintiff's records from treating and examining physicians, his testimony of his daily activities, the testimony of two expert medical consultants, the opinions of state agency consultants, *and* Plaintiff's non-compliance with his prescribed CPAP mask. *See Ellison* 355 F.3d 1272, 1275 (11th Cir. 2003) (affirming ALJ's decision to deny benefits and distinguishing *Dawkins*, because the ALJ's decision that the plaintiff was not disabled was not inextricably tied to the finding of noncompliance). Tellingly, Plaintiff's portion of the parties' joint brief includes the

---

When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." 2018 WL 4945641, at *1, n.1.

argument heading that the ALJ should have incorporated limitations related to his obstructive sleep apnea into his RFC, but Plaintiff does not develop or even mention this argument in the body of his brief.

To backtrack, a claimant's RFC is the most work he can do despite any limitations caused by his impairments. 20 C.F.R. § 404.1545(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence. 20 C.F.R. § 404.1545(a)(2). This includes both severe and non-severe impairments when determining if the claimant can "meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). Ultimately, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who must support her findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c).

Here, the ALJ's RFC assessment is supported by substantial evidence besides Plaintiff's failure to follow his prescribed sleep apnea treatment. Plaintiff testified that he had a few close calls at work with falling asleep on the job. (R. 34-35) He said he drives but only short distances for fear of falling asleep behind the wheel. (*Id.*) His wife drives him to appointments and errands. According to Plaintiff, whenever he tries to use his CPAP mask, he involuntarily pulls it off during the night. (R. 36-37) Plaintiff also testified that his daily routine involves waking up, eating breakfast, falling asleep, using his computer, falling asleep again, using his smart phone, and watching TV. But – as the ALJ points out – in Plaintiff's function report, he notes he does light household chores, makes simple meals, does some laundry and dishes, and reads to pass the time. (R. 1583) Plaintiff also told a mental health counselor in September 2015 he enjoys playing drums with his church band. (R. 412)

Turning to the medical records, they show that in August 2013, Plaintiff consulted with ENT specialist Joyce Lynch, M.D. (R. 1154)  Plaintiff explained that he had been diagnosed with sleep apnea a year and a half earlier but struggled with using his CPAP nasal mask because it dried out his nostrils, and the full face mask made him claustrophobic.  Dr. Lynch recommended that Plaintiff have his enlarged tonsils and uvula extracted, a procedure Plaintiff underwent in March 2014. (R. 379)  A few months later, in June 2014, Plaintiff had a sleep study conducted by Prakash Reddy, M.D. and Travis Grant, P.A. at Health First Sleep Center.  Mr. Grant noted that Plaintiff tolerated the nasal mask "without a negative response" after a few adjustments. (R. 1133)  He tolerated the mask "very well" throughout the study and achieved REM sleep multiple times.  Afterward, Plaintiff assessed his sleep at 10/10 and felt refreshed.  Plaintiff was diagnosed with obstructive sleep apnea and told to comply with his prescribed CPAP treatment, lose weight, and exercise. (*Id.*)

In June 2015, a year later, Plaintiff was treated at the VA by sleep specialist Lisa Lang, R.N., who noted that Plaintiff had not used his CPAP mask during the past year. (R. 475)  In September 2015, Plaintiff told his VA mental health counselor he was not using his C-PAP machine but that his sleep was "fair" most nights. (R. 412)  And in August 2017, Ms. Lang treated Plaintiff again, and again noted that Plaintiff had not used his CPAP mask. (R. 1183)  Additionally, medical expert Allan Goldstein, M.D. testified that Plaintiff suffers from obstructive sleep apnea. (R. 42)  But Dr. Goldstein testified that he did not know if the impairment limits him, because Plaintiff did not wear his mask. (R. 47)  The medical expert opined that Plaintiff should avoid extreme heat, extreme cold, and pulmonary irritants – non-exertional limitations related to his sleep apnea that the ALJ incorporated into Plaintiff's RFC. (R. 1577)

A review of the record convinces the Court that the ALJ did not rely solely on Plaintiff's non-compliance with his CPAP treatment and, consequently, did not run afoul of SSR 82-59. The ALJ considered Plaintiff's testimony; his statements on agency forms that he can perform household chores, cook, and drive short distances; his treatment records, which note Plaintiff's sleep was "fair" even without the mask and that Plaintiff did not attempt to use the mask for over a year; and the testimony of Dr. Goldstein. (R. 1571-87) Against this backdrop, the ALJ found that Plaintiff (within the relevant time period) retained the RFC to perform a full range of work at all exertional levels. (R. 1577) Importantly, beyond an argument heading, Plaintiff does not contend that the ALJ should have included sleep apnea limitations in Plaintiff's RFC, and I do not address this argument.

At this point in the analysis, I emphasize that, to the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if I would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). In other words, I may not reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision. *See Bloodsworth*, 703 F.2d at 1239. On this record, the ALJ did not err.

    2.    *AC's consideration of additional evidence*

Next, Plaintiff makes the related argument that the AC did not properly evaluate the sleep disorders medical source statement completed by Sherwin Mina, M.D. and submitted

to the AC for the first time. The AC initially denied Plaintiff's request for review in May 2019. (R. 11) In January 2020, however, Plaintiff moved for a good cause late filing, and asked the AC to consider Dr. Mina's September 2019 medical source statement. (R. 217) The AC agreed and set aside its earlier decision denying review. The AC considered Dr. Mina's findings but denied review. (R. 1)

A hearing before the ALJ is not an adversary proceeding, and the ALJ has a basic obligation to develop a full and fair record. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). This obligation exists even if the claimant is represented by counsel. *Id*. The claimant, however, "bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence to support his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant may present evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). If a claimant presents evidence after the ALJ's decision, the AC must consider it if it is new, material, and chronologically relevant. 20 C.F.R. § 416.1470(b); *see also Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015).

Evidence is material if a reasonable possibility exists that it would change the administrative result. *Washington*, 806 F.3d at 1321. New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 416.1470(b). The AC must grant the petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence. *Ingram*, 496 F.3d at 1261 (quotation marks omitted); *see also Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-01 (11th Cir. 2008) (*per curiam*). In other words, a claimant seeking remand under sentence four of 42 U.S.C. § 405(g) "must show, in light of the new evidence submitted

to the AC, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013).

Dr. Mina examined Plaintiff once, in September 2019 (approximately one year after the ALJ's decision and two years after Plaintiff's DLI), and diagnosed him with obstructive sleep apnea and severe hypersomnia. He wrote: Plaintiff is "unable to concentrate and stay awake for extended amounts of time. Does not tolerate therapy." (R.10) According to Dr. Mina, Plaintiff would need to take two to three unscheduled breaks of 20-30 minutes every workday due to excessive sleepiness, and he would be off-task 25 percent of the time. Dr. Mina opined that Plaintiff should avoid all driving, should not operate machinery or power tools, and that his ability to perform routine, repetitive tasks is severely limited.

The AC considered this evidence in its decision denying review of the ALJ's decision. It wrote:

> You submitted Sleep Disorders Medical Source Statement from Dr. Sherwin M. Mina, dated September 9, 2019 (3 pages). The Administrative Law Judge decided your case through December 31, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 31, 2017.

(R. 2) Evidence may be chronologically relevant even if it post-dates the ALJ's decision. For instance, in *Washington*, the Eleventh Circuit considered an examining psychologist's opinions to be chronologically relevant "even though [the psychologist] examined [the claimant approximately seven] months after the ALJ's decision." 806 F.3d at 1322. The psychologist had reviewed the claimant's treatment records from the period before the ALJ's decision; the claimant had told the psychologist he had suffered from the conditions "throughout his life" (which obviously included the relevant time period); and there was "no assertion or evidence" that the claimant's condition worsened "in the period following the

11

ALJ's decision." *Id.*; *see also Wordsman v. Berryhill*, 2019 WL 1349821, at *4-5 (M.D. Fla. Mar. 26, 2019) (remanding to the Commissioner for reconsideration of evidence submitted to the AC for the first time; evidence that post-dated relevant period by four months). But in *Washington*, unlike in this case, the AC refused to consider the additional evidence submitted by the plaintiff before denying review. 806 F.3d at 1318.

But in *Stone v. Commissioner of Social Security Administration*, 658 F. App'x 551, 555 (11th Cir. 2016), the Eleventh Circuit found the circumstances "significantly different" from those present in *Washington*. The records in *Stone* "demonstrate[d] a worsening" of the relevant symptoms after the ALJ's decision. *Id*. And in *Hargress v. Commissioner of Social Security Administration*, 883 F.3d 1302, 1309-10 (11th Cir. 2018), the Eleventh Circuit found that progress notes post-dating the ALJ's decision did not "relate to the period before the ALJ's . . . decision" and "nothing in these new medical records indicates the doctors considered [the claimant's] past medical records or that the information in them relates to the period at issue, which materially distinguishes this case from *Washington*." *Id.*; *see also Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 858 (11th Cir. 2018) (finding MRI report prepared four months after ALJ's decision not chronologically relevant or material as there was no indication report related back to the relevant time period); *Green v. Comm'r of Soc. Sec.*, 695 F. App'x 516, 518-19 (11th Cir. 2017) (finding AC properly declined review where additional treatment notes were not chronologically relevant, the treating doctor did not state the condition existed during the relevant period, and did not state he reviewed plaintiff's medical records during the relevant period); *Smith*, 272 F. App'x at 801-02 (affirming district court's decision; new evidence submitted to AC did "not establish a likelihood that the ALJ would

have reached a different result," in part because they post-dated the ALJ's decision by between four and eight months).

I find this case more like *Stone* and *Hargress* and less like *Washington*. First, the AC considered the new evidence and incorporated it into the administrative record before denying review. Second, there is nothing in Dr. Mina's statements indicating that, in formulating his opinion, he considered Plaintiff's medical records during the relevant time period (Plaintiff's onset date of January 1, 2013, through his DLI of December 31, 2017). (R. 1574) Dr. Mina also does not opine that Plaintiff's condition and associated limitations relate back to the relevant period. In fact, Dr. Mina states he saw Plaintiff only one time, in September 2019, for 30 to 40 minutes before authoring his statement. Consequently, I cannot say that Dr. Mina's statement is chronologically relevant. Plaintiff's second argument fails.

    D.    *Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on June 16, 2022.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE